UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONYAKA BURNETT,

          Plaintiff

v.

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

Civil Action No.: 17-11769
Honorable Stephen J. Murphy, III
Magistrate Judge Elizabeth A. Stafford

# REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 11, 12]

Plaintiff Monyaka Burnett appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence and thus **RECOMMENDS** that:

- Burnett's motion [ECF No. 11] be **DENIED**;

- the Commissioner's motion [ECF No. 12] be **GRANTED**; and

- the ALJ's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

   A. **Burnett's Background and Disability Applications**

Born July 26, 1982, Burnett was 30 years old on the alleged disability onset date of July 17, 2013, and 32 years old on March 31, 2015, the date last insured. [ECF No. 9-2, Tr. 26]. She has past relevant work as a hairstylist and nail technician. [*Id.*]. Burnett claims disability due to a "severe compound fracture of the fibula with surgery." [ECF No. 9-5, Tr. 153].

After a hearing on March 9, 2016, during which Burnett and a vocational expert (VE) testified, the ALJ found that Burnett was not disabled. [*Id.*, Tr. 32-71]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-6]. Burnett timely filed for judicial review. [ECF No. 1].

   B. **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. §404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

the fifth step is reached.  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Burnett was not disabled.  At the first step, she found that Burnett had not engaged in substantial gainful activity during the relevant period, the alleged onset date of July 17, 2013, through the date last insured, March 31, 2015.  [ECF No. 9-2, Tr. 21].  At the second step, she found that Burnett had the severe impairments of "non-displaced tibia and fibula fracture, status post ORIF of the distal tibia and fibula, morbid obesity, cervical degenerative disc disease, carpal tunnel syndrome with left hand trauma, and history of intermittent asthma."  [*Id.*].  Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment.  [*Id.*, Tr. 22-23].

Between the third and fourth steps, the ALJ found that Burnett had the RFC to perform sedentary work,[2] except that:

---

[2] "The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties….Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10 (1983." Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).

4

> [S]he can occasionally climb stairs, crouch, crawl, kneel, stoop, and bend. She can never crouch. She must avoid work hazards, such as dangerous moving machinery, and unprotected heights, and is therefore unable to climb ladders, ropes and scaffolds. [She] can occasionally operate foot controls with the right lower extremity. She can perform frequent grasping with the bilateral upper extremities. She must avoid continuous exposure to pulmonary irritants. She is limited to low stress work, which is work that is self-paced and not at a production rate and, which is not in team/tandem with coworkers.

[*Id.*, Tr. 23]. At step four, the ALJ found that Burnett was not capable of performing her past relevant work as a hairstylist/nail technician. [*Id.*, Tr. 26]. At the final step, after considering Burnett's age, education, work experience, RFC, and the testimony of the VE, the ALJ determined that there were jobs that existed in significant numbers that Burnett could perform, including positions as inspector and surveillance monitor, rendering a finding that she was not disabled. [*Id.*, Tr. 27].

## II. ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Burnett argues the ALJ erred by not crediting the opinion of a consultative examiner that she required an RFC allowing her to elevate her leg, and by not properly assessing her credibility. The Court disagrees, and recommends that the ALJ's decision be affirmed.

### A.

Burnett was hit by a car in July 2013, sustaining open distal fractures of her tibia and fibula, and requiring emergency surgery. [ECF No. 12-7, Tr. 212]. In November 2014, consulting examiner, Harold Nims, D.O., completed an internal medicine examination and report. [ECF No. 9-8, Tr. 325-333]. Dr. Nims opined that Burnett "seems capable of non-strenuous tasks performed in a sedentary type setting with the ability to elevate her right leg as necessary." [*Id.*, Tr. 328]. His summary described Burnett as having "constant swelling of the right ankle," but he did not report reviewing Burnett's medical records, so it appears that he relied on her self-report of chronic swelling. [*Id.*, Tr. 325, 328].

The ALJ afforded Dr. Nims's opinion partial weight, finding that neither his opinion nor the longitudinal record supported a leg elevation restriction. [ECF No. 9-2, Tr. 25]. Burnett argues that the ALJ did not set forth a valid basis for dismissing Dr. Nims's opinion regarding leg elevation and merely substituted her own medical judgment for that of Dr. Nims. The Court disagrees.

The ALJ is charged with considering all of the evidence and assessing the claimant's RFC. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The Social Security Act instructs that the ALJ—not a physician—ultimately determines a claimant's RFC."). *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011). And contrary to Burnett's argument, "[a]n ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding." *Coldiron,* 391 F. App'x at 439.

An ALJ is required to consider every medical opinion of record. 20 C.F.R. § 404.1527. Since Dr. Nims was not a treating physician, the ALJ was not required to defer to his opinion. Instead, "[I]n weighing a consultative examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*,

No. 4:15CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). Those factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. § 404.1527(c)(2)-(6). But there is no rule that requiring an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

The Court finds that the ALJ sufficiently considered Dr. Nims's opinion and the record as a whole, and that substantial evidence supports her determination that the restriction requiring leg elevation was not supported. With respect to the first two factors regulatory factors, Dr. Nims examined Burnett once; they did not have an ongoing treatment relationship. Concerning the third factor—supportability of the opinion—Dr. Nims cited Burnett's "constant" swelling, but he had no first-hand knowledge of how often she experienced swelling. He did observe some edema in the right foot and ankle on the date of his examination, but the ALJ was permitted to consider that one-time observation against the longitudinal record.

The record as a whole, pertinent to the fourth factor, does not evidence constant swelling or complaints of swelling, and includes no leg elevation restrictions.  Since September 2013, when Burnett became weight-bearing as tolerated, [ECF No. 9-7, Tr. 250], she was reported to have swelling only twice.  [*Id.*, Tr. 252, 205-08].  She had mild swelling in December 2013, and moderate swelling in February 2014 (after she stepped on her foot the wrong way).  [*Id.*].  Burnett notes that she was prescribed compression stockings in March 2014, but the prescribing doctor did not mention observing swelling during the examination at that visit.  [*Id.*, Tr. 256-57].  A board certified neurologist examined and treated Burnett three times in 2015 for ailments that included her ankle injury. [ECF No. 9-8, Tr. 334-38].  He wrote detailed reports of her complaints and of his examinations, but never documented swelling, complaints of swelling, or reports that Burnett tended to elevate her leg, and his treatment plan did not include leg elevation.  [*Id.*].  In fact, none of the medical evidence that Burnett cites demonstrate that any treating physician imposed leg elevation restrictions.  [ECF No. 11, PageID 403-05].

The ALJ also noted that Dr. Nims had described Burnett as appearing stable in the standing, sitting, and supine positions; as having a decreased range of motion in her right ankle and slight edema, but as being able to

9

stand on one leg at a time without difficultly; and as showing no evidence of atrophy. [ECF No. 9-2, Tr. 25, citing ECF No. 9-8, Tr. 326-28]. In an emergency treatment note cited by the ALJ from around the same time as Dr. Nims's examination, Burnett complained about a recent ectopic pregnancy, a cough and a sore throat, and did "not have any other complaints at this time." [ECF No. 9-2, Tr. 25, citing ECF No. 9-8, Tr. 319]. During that visit, she had normal strength, and a normal gait and station. [ECF No. 9-8, Tr. 320, 323]. The ALJ further compared Dr. Nims's finding in November 2014 that Burnett could not heel, toe, or tandem walk with her neurologist's finding in June 2015 that she could perform those functions. [ECF No. 9-2, Tr. 325; ECF No. 9-8, Tr. 335]. In another record the ALJ cited from after Dr. Nims's report, Burnett was described as having pain that was well controlled with Norco, and as ambulating well. [ECF No. 9-2, Tr. 24, citing ECF No. 9-8. Tr. 293].

Thus, substantial evidence in the record supports the ALJ's determination that the longitudinal record did not support a leg elevation restriction. The evidence that Burnett cites may be supportive of Dr. Nims's leg elevation restriction, but "[i]f the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations and internal quotation marks omitted).

**B.**

The ALJ determined that Burnett's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the evidence in the record. [ECF No. 9-2, Tr. 57]. Burnett submits that the evidence she cites shows that she "is unable to perform work in a competitive work setting due to a combination of exertional and nonexertional limitations and specifically her need to elevate the right lower extremity." [ECF No. 11, PageID 403-05]. Except for her claim that she requires a leg elevation restriction, Burnett's claim that she generally cannot work in a competitive work environment is waived. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)) (internal quotation marks and citation omitted).

Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v.*

*Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. Here, the same substantial evidence that supports the ALJ's decision to give only partial weight to Dr. Nims's opinion supports the ALJ's finding that the record was inconsistent with Burnett's claim that she needs to constantly elevate her leg. The Court finds no compelling reason to disturb the ALJ's credibility determination.

## III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Burnett's motion [ECF No. 11] be **DENIED**; that the Commissioner's motion [ECF No. 12] be **GRANTED**; and that the ALJ's decision be **AFFIRMED.**

                                              s/Elizabeth A. Stafford
                                              ELIZABETH A. STAFFORD
Dated: April 30, 2018                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*,

638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 30, 2018.

                                               s/Marlena Williams
                                               MARLENA WILLIAMS
                                               Case Manager